## EX PARTE KARSTENDICK.

1. Where a person, convicted of an offence against the United States, is sentenced to imprisonment for a term longer than one year, the court may, in its discretion, direct his confinement in a State penitentiary.
2. Imprisonment at hard labor, when prescribed by statute as part of the punishment, must be included in the sentence of the person so convicted; but, where fine and imprisonment, or imprisonment alone, is required, the court is authorized, in its discretion, to order its sentence to be executed at a place where, as part of the discipline of the institution, such labor is exacted from the convicts.
3. Where a court, in passing sentence of imprisonment in the penitentiary, finds that, in the district or territory where the court is holden, there is no penitentiary suitable for the confinement of convicts, or available therefor, such finding is conclusive, and cannot be reviewed here upon a petition for *habeas corpus;* and, where the Attorney-General has designated a penitentiary in another State or Territory, for the confinement of persons convicted by such court, it may order the execution of its sentence at the place so designated.
4. It is no objection to the validity of the order, that the State has not given its consent to the use of its penitentiary as a place of confinement of a convicted offender against the laws of the United States. So long as the State suffers him to be detained by its officers in its penitentiary, he is rightfully in their custody, under a sentence lawfully passed.

Petition for *habeas corpus.*
Mr. *David C. Labatt* for the petitioner.
Mr. *Solicitor-General Phillips, contra.*

Mr. Chief Justice Waite delivered the opinion of the court.

Karstendick, the petitioner, was indicted for a conspiracy, and convicted May 1, 1876, in the Circuit Court of the United States for the District of Louisiana, under sect. 5440 of the Revised Statutes. The punishment for his offence, prescribed by the statute, is a penalty of not less than $1,000 nor more than $10,000, and imprisonment not more than two years. The sentence, as passed by the court, so far as it is material to the present inquiry, is as follows: —

"And, it having been in due form determined and ascertained that there is no penitentiary within the district of Louisiana, suitable for the confinement of persons convicted of crime in the courts of the United States, in said district of Louisiana, and the Attorney-General of the United States having, in due form, and by and with competent authority, designated the penitentiary at Moundsville, in West Virginia, as the place of confinement, subsistence, and employment of all persons convicted, or who may hereafter be convicted, by the courts of the United States, of crime against the United States of America, in said district of Louisiana, and such designation having been in due form notified to the court and entered upon the record thereof, . . . it is considered, by reason of the verdict herein, . . . that the said Otto H. Karstendick be confined in the penitentiary of the State of West Virginia, at Moundsville, in said State, for and during the full period of sixteen calendar months from and after this day, and that he do also further pay a fine of $2,000," &c.

In execution of this sentence, Karstendick is now imprisoned in the penitentiary at Moundsville, and he seeks through this application to obtain a discharge, alleging for cause that the order of the court for his imprisonment in a penitentiary, and without the State of Louisiana, is not authorized by law, and consequently void.

Sect. 5440 of the Revised Statutes is a reproduction of sect. 30 of an act of Congress, passed March 2, 1867, "to amend

existing laws relating to internal revenue, and for other purposes." 14 Stat. 484. At that time another act, passed March 3, 1865, "regulating proceedings in criminal cases, and for other purposes," was in force, which provided, in sect. 3, that "in every case where any person convicted of any offence against the United States shall be sentenced to imprisonment for a period longer than one year, it shall be lawful for the court, by which the sentence is passed, to order the same to be executed in any State prison or penitentiary within the district or State where such court is held, the use of which prison or penitentiary is allowed by the legislature of such State for such purposes." 13 Stat. 500. This provision is also reproduced in sect. 5541 of the Revised Statutes, save only that the words "State jail" are substituted for the words "State prison," where they occur in the original act.

As early as 1834 Congress enacted that, whenever any criminal convicted of any offence against the United States shall be imprisoned in pursuance of such conviction, or of the sentence thereupon, in the prison or penitentiary of any State or Territory, such criminal shall, in all respects, be subject to the same discipline and treatment as convicts sentenced by the courts of the State or Territory in which such prison or penitentiary is situated, and, while so confined in such prison, shall also be exclusively under the control of the officers having charge of the same, under the laws of such State or Territory. 4 Stat. 739.

This provision is re-enacted in sect. 5539 of the Revised Statutes, the word "jail," however, being substituted in the revision for "prison," where it occurs in the original.

All these several statutes, being in *pari materia*, were, when in force before the revision, to be construed together. The same is true of the corresponding revised sections, and, under this rule, the same effect must be given to sect. 5440, that it would have if it read as follows: "All the parties to such a conspiracy shall be liable to a penalty of not less than $1,000 and not more than $10,000, and to imprisonment not more than two years." Sect. 5440. If the sentence of imprisonment shall be for a longer term than one year, the court passing the same may order it to be executed in any State jail or penitentiary

within the district or State where said court is held (sect. 5541), and the criminal so imprisoned shall, in all respects, be subject to the same discipline and treatment as convicts sentenced by the courts of the State or Territory in which such jail or penitentiary is situated, and shall, while so confined therein, be exclusively under the control of the officers having charge of the same under the laws of the State.   Sect. 5539.

This language is explicit, and, taken by itself, is certainly sufficient to authorize imprisonment in a penitentiary, at the discretion of the court, in all cases where the sentence is for a longer term than one year.   But the counsel for the petitioner, in their argument, refer to other sections of the statute, which in terms provide for punishment by imprisonment at hard labor, and they seek to confine the power of imprisonment in a penitentiary to such cases; because, as they claim, imprisonment in a penitentiary necessarily implies imprisonment at hard labor; and where the punishment provided for by the statute is imprisonment alone, a sentence to confinement at a place where hard labor is imposed as a consequence of the imprisonment, is in excess of the power conferred.

We have not been able to arrive at this conclusion.   In cases where the statute makes hard labor a part of the punishment, it is imperative upon the court to include that in its sentence. But where the statute requires imprisonment alone, the several provisions which have just been referred to place it within the power of the court, at its discretion, to order execution of its sentence at a place where labor is exacted as part of the discipline and treatment of the institution or not, as it pleases. Thus, a wider range of punishment is given, and the courts are left at liberty to graduate their sentences so as to meet the ever-varying circumstances of the cases which come before them. If the offence is flagrant, the penitentiary, with its discipline, may be called into requisition; but if slight, a corresponding punishment may be inflicted within the general range of the law.

This view of the case is strengthened by a further examination of the legislation upon this subject.   As early as 1825, in an " Act more effectually to provide for the punishment of crimes against the United States, and for other purposes " (4 Stat.

118), it was enacted (sect. 15) that "in every case where any criminal convicted of any offence against the United States shall be sentenced to imprisonment and confinement at hard labor, it shall be lawful for the court by which the sentence is passed, to order the same to be executed in any State prison or penitentiary within the district or State where such court is holden, the use of which prison or penitentiary may be allowed or granted by the legislature of such State for such purposes." With this statute in force, the act of 1865, which has already been referred to, was passed, giving the same power in nearly the same words, where the punishment was by imprisonment for a longer term than one year, without any special requirement as to hard labor.

These two acts are separately re-enacted in the Revised Statutes. The act of 1825 is reproduced in sect. 5542, and that of 1865 in sect. 5541, the language of the two original acts being substantially retained in the revision. With this legislation in full force, it is impossible to believe that it was the intention of Congress to confine imprisonment in penitentiaries exclusively to cases in which hard labor is in express terms made by statute a part of the punishment.

Without extending the argument further upon this branch of the case, we are clearly of the opinion that the order of the court directing the imprisonment in a penitentiary is not void. It still remains to consider whether that part of the sentence which directed that the imprisonment should be in the penitentiary at Moundsville can be sustained.

It is conceded that Congress has the power to provide that persons convicted of crimes against the United States in one State may be imprisoned in another. Congress can cause a prison to be erected at any place within the jurisdiction of the United States, and direct that all persons sentenced to imprisonment under the laws of the United States shall be confined there; or it may arrange with a single State for the use of its prisons, and require the courts of the United States to execute their sentences of imprisonment in them. All this is left to the discretion of the legislative department of the government, and is beyond the control of the courts.

Acting under this power, Congress, while recognizing as

a rule the propriety of sentencing those convicted of crime against the United States to imprisonment in the jails or prisons of the State where their conviction was had, did, in 1864, to meet contingencies that might arise, enact that "all persons who have been, or may hereafter be, convicted of crime by any court of the United States, not military, the punishment whereof shall be imprisonment in a District or Territory where at the time of such conviction there may be no penitentiary or other prison suitable for the confinement of convicts of the United States, or available therefor, shall be confined, during the term for which they may have been, or may be, sentenced, in some suitable prison, in a convenient State or Territory, to be designated by the Secretary of the Interior." 13 Stat. 74. In 1872, the power of designating was transferred to the Attorney-General. This provision is also re-enacted in sect. 5546 of the Revised Statutes, the word "jail" being substituted for "other prison," and "suitable jail or penitentiary" for "suitable prison," in the original act. This section is to be construed in connection with the other sections which have been referred to. In fact, it may be treated as a proviso to sects. 5541 and 5542.

The counsel for the petitioner do not dispute the validity of this legislation; but they claim that in this case the conditions precedent to the execution of the sentence in a prison outside of the State have not been complied with, and consequently that the case is not brought within the power of the court to make such an order.

It is first insisted, that, as the State of Louisiana permits the use of its jails and penitentiaries for the punishment of criminals convicted in the courts of the United States, the sentences of imprisonment by those courts cannot be executed elsewhere. It is not enough that the jails and penitentiaries of the State may be used: they must also be suitable. Whether suitable or not, is a question of fact. In this case, the court passing the sentence has determined this question, and found that in the State of Louisiana there was no penitentiary suitable for the confinement of persons convicted of crime against the United States.

This finding is conclusive until reversed, and it cannot be

reviewed in this form of proceeding. To justify a discharge, under any writ to be issued upon this application, it must appear upon the face of the record that the order of commitment was void.

The court also decided, that, under the circumstances of this case, the punishment should be by imprisonment in a penitentiary. This made it necessary to ascertain whether any penitentiary outside the State had been designated by the Attorney-General of the United States for use when that in the State was found to be unsuitable.

As to this, the record shows, that, on the first day of April, 1876, the Attorney-General addressed the following communication to the United States Attorney at Louisiana:—

" Under the authority granted by sect. 5546. of the Revised Statutes of the United States, I designate the penitentiary at Moundsville, in West Virginia, as the place for the confinement, subsistence, and employment of all persons convicted, by the courts of the United States for the District of Louisiana, of crime against the United States, and sentenced by said courts to imprisonment longer than one year, on and after this instant. You will bring this designation to the notice of the courts, and have this order entered, if possible, on the records."

This action of the Attorney-General was brought to the attention of the Circuit Court, and the desired entry made.

This, as it seems to us, is clearly a designation under the statute, and we are unable to agree with the counsel for the petitioner in the opinion that it applies only to persons under conviction and sentence at the time the order was issued. It is true the language is, " all persons convicted . . . and sentenced; " and that certainly includes persons already convicted, but it does not necessarily exclude persons thereafter to be convicted. The statute makes it the duty of the Attorney-General to designate other places of confinement, whenever the jails or penitentiaries of a State are unsuitable or unavailable. That it was his intention to act in reference to future convictions as well as to past, is evident from the form of his communication, which is not addressed to, or, so far as appears, intended for, the marshal of the district, but to the attorney of the United States, for the purpose of being brought by him to

the attention of the courts.   An order from the Attorney-General to the marshal was all that was necessary to effect a removal after sentence passed.   No action of the courts was required.   A notification to the courts was, therefore, only necessary for the purpose of influencing their conduct in the future.   A sentence in this case for imprisonment in a State penitentiary would not have been void, but it might not have prevented the Attorney-General, acting under the statute, from directing a removal of the convict to some penitentiary outside of the State.   Until such removal, the imprisonment in Louisiana would have been good.   But if the court finds that the State penitentiary is unsuitable in fact, and the Attorney-General has designated another for use on that account, we can see no reason why the court may not sentence the person convicted to imprisonment at the place designated.   Suppose there had been no penitentiary at all in the State, and under the law the Attorney-General had made his designation, would it for a moment be doubted that a sentence to imprisonment at the designated place would be good ?   But if a penitentiary is unsuitable within the meaning of the statute, how is the case different in principle from what it would be if there were none ?   The order of the Attorney-General is equivalent to a finding by him that the penitentiary of the State was unsuitable or unavailable for the confinement of criminals convicted under the laws of the United States ; and when this action of the Attorney-General is supplemented by a finding of the same fact by the court, it seems to us to be as much within the power of the court to order the imprisonment at Moundsville, as it would have been if there had been no penitentiary at all in Louisiana.   It certainly could not have been contemplated that the courts must in all cases sentence to confinement in the State where the conviction was had, without regard to the fact whether it could be executed there or not, and that the sole power of directing the sentence to be executed in another State was vested in the Attorney-General.   That is neither within the letter nor the spirit of the statute.   The sole power of designation is in the Attorney-General ; but when he has designated, if the facts which authorize the change of place exist, it is as much within the power of the court to order its

.sentence to be executed at the designated place, as to determine which of two prisons in a State, equally suitable and equally available for the punishment to be inflicted, shall be employed for that purpose. The policy of the law is to avoid circuity of action, and to permit the courts to do directly, as far as possible, all that they may do indirectly.

Neither is it an ·objection to the order, as made, that the designation of the Attorney-General is of a penitentiary alone. If the sentence ·of the court had been imprisonment in a jail, and the jails ·of· the State of Louisiana had been found unavailable or unsuitable, a designation of some jail outside of the State might have been necessary before the court could have ordered a confinement outside of the State. But here the sentence is for imprisonment in a penitentiary; and as to that, as has been seen, there was a sufficient designation.

It is further insisted on behalf of the petitioner, that the legislature of the State of West Virginia has not given its consent to the use of the penitentiary of the State by the United States for the punishment of their criminals, and that for this reason the order for his confinement there is void. The petitioner is actually confined in the penitentiary, and neither the State nor its officers object. Congress has authorized imprisonment, as a punishment for crimes against the United States, in the State prisons. So far as the United States can do so, they have made the penitentiary at Moundsville a penitentiary of the United States, and the State officers having charge of it their agents to enforce the sentences of imprisonment passed by their courts. The question is not now whether the State shall submit to this use of its property by the United States, nor whether these State officers shall be compelled to act as the custodians of those confined there under the authority of the United States, but whether this petitioner can object if they do not. We think he cannot. So long as the State permits him to remain in its prison as the prisoner of the United States, and does not object to his detention by its officers, he is rightfully detained in custody under a sentence lawfully passed.

Neither do we think the objection tenable, that there can be no imprisonment in a penitentiary outside of Louisiana, if there

are within that State jails that are both suitable and available. It is for the court to determine whether the imprisonment shall be in a jail or a penitentiary. If in a penitentiary, then a penitentiary must be found inside of the State suitable and available, in order that the sentence to be pronounced may be executed there. If there is none, resort may be had to those of another State. Imprisonment need not necessarily be ordered in a jail because the penitentiary of the State is unsuitable.

As the whole record is before us, and the case has been fully argued upon the merits, the writ is                    *Denied.*

NOTE. — In *Ex parte Henderson*, the application for a writ of *habeas corpus* was denied, for the reasons assigned in the foregoing opinion.