### In re WELTY.

(District Court, D. Kansas. June 1, 1903.)

1. CRIMINAL LAW—VALIDITY OF SENTENCE.
   A sentence of a defendant convicted of crime is legal so far as it is within the letter of the law and the jurisdiction of the court imposing it, and is only void as to the excess, provided such excess is separable and may be dealt with without disturbing the valid portion of the sentence.

2. SAME—ERROR IN RECORD—POWER TO CORRECT.
   Where the sentence to imprisonment of a defendant convicted of crime, as entered, did not contain a requirement of hard labor as provided by the statute prescribing the punishment, the court had jurisdiction at a

¶ 1. See Criminal Law, vol. 15, Cent. Dig. § 2528

subsequent term by a nunc pro tunc order to direct an amendment of the entry to include such requirement on conclusive evidence that its omission was an error of the clerk, and that the sentence as actually pronounced was in conformity to the statute.

On Petition for Writ of Habeas Corpus.

C. R. Buckner, for petitioner.

Horace Speed, U. S. Atty., for Oklahoma.

HOOK, District Judge. This is an application for a writ of habeas corpus. At the November term, 1901, of the District Court sitting in and for the county of Noble and territory of Oklahoma and the Indian country thereto attached for judicial purposes, with the powers of the District and Circuit Courts of the United States, the petitioner, Bert Welty, was tried on an indictment charging him with murder. He was found guilty by the jury, who added to their verdict the qualifying words, "without capital punishment" (Act Jan. 15, 1897, 29 Stat. 487, c. 29 [U. S. Comp. St. 1901, p. 3620]), and, as appears from the record originally made in the case, he was sentenced to be "imprisoned in the United States penitentiary at Ft. Leavenworth, Kansas, and confined therein for and during the term of his natural life." The act of Congress referred to provides that whenever a jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment at hard labor for life. The petitioner having been imprisoned in the penitentiary specified, and having served for 10 months, now complains that the judgment is void, in that there was omitted therefrom a provision for hard labor, and also that the court in which he was tried had no jurisdiction to render the judgment upon which he is being held and imprisoned.

It is familiar doctrine that where a court has jurisdiction of the person and of the offense the imposition of a sentence in excess of what the law permits does not render the legal portion of the sentence void, but only leaves such portion of the sentence as may be in excess open to attack. A sentence is legal so far as it is within the letter of the law and the jurisdiction of the court imposing it, and is only void as to the excess, provided such excess is separable and may be dealt with without disturbing the valid portion of the sentence. United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631. Whenever the law defining the offense of which a person is convicted prescribes imprisonment at hard labor, it is lawful for the court by which the sentence is passed to order the same executed in a penitentiary (Rev. St. § 5542 [U. S. Comp. St. 1901, p. 3721]); and in those cases where the law provides for imprisonment alone, and the person convicted is sentenced thereunder to imprisonment for more than one year, it is within the power of the court, at its discretion, to order the execution of its sentence in a penitentiary where labor is exacted as part of the discipline and treatment of the institution (Rev. St. § 5541; Ex parte Karstendick, 93 U. S. 396, 23 L. Ed. 889; In re Mills, 135 U. S. 263, 10 Sup. Ct. 762, 34 L. Ed. 107). In other words, in order to justify imprisonment in a penitentiary at hard labor it is not essential in cases where

the imprisonment is for a longer period than one year that the law defining the offense and providing for the punishment should include a provision for hard labor.

The contention of the petitioner is not that he is suffering an excessive punishment or that the court imposed a greater punishment than the law authorized. Nor does he contend that he is not undergoing precisely the punishment that the law authorizes; that is to say, imprisonment at hard labor. He says that although the law in his case provides for imprisonment at hard labor, and he is actually undergoing such punishment, yet the sentence of the court omitted the hard-labor feature.

It may be that the rules and regulations of the United States penitentiary prescribe hard labor as a part of its discipline; and, while it is true that a court is not authorized to impose a punishment differing in character from that prescribed by the law, I am not prepared to say that in a case like the one in hand it is not competent for the court to inquire as to the discipline actually enforced in the penal institution in which the complaining party is confined. If the fact be that the discipline of the penal institution in question includes hard labor, the petitioner is in such event actually undergoing the punishment provided by law, and the effect of the sentence imposed would be in conformity with the letter of the act of Congress. While language may be found in some cases indicating that where the statute makes hard labor a part of the punishment it is imperative that the court include it in its sentence (Ex parte Karstendick, supra), it is not clear that it does not sufficiently do so where the sentence is to imprisonment in a penal institution in which hard labor is exacted as part of the treatment of the prisoners confined therein.

By act of March 3, 1891, 26 Stat. 839, c. 529 [U. S. Comp. St. 1901, p. 3725], Congress provided for the selection of three sites, and for the erection thereon of suitable buildings, "for the confinement of all persons convicted of any crime whose term of imprisonment is one year or more at hard labor by any court of the United States in any state, territory or district under the jurisdiction of the Department of Justice of the United States." Provision is made by this act for the fitting of workshops for the employment of prisoners at the institutions thus to be established. By act of March 2, 1895, 28 Stat. 957, c. 189 [U. S. Comp. St. 1901, p. 3728], the military prison at Ft. Leavenworth, Kan., was changed to a United States penitentiary, and it was transferred from the War Department to the Department of Justice. Provision was made in this act for the employment of prisoners at hard labor in certain specified lines. By act of June 10, 1896, 29 Stat. 380, c. 400 [U. S. Comp. St. 1901, p. 3729], there was established a new site for the erection of a United States penitentiary on the Ft. Leavenworth Military Reservation, and there was made therein provision for workshops for the employment of prisoners. The prisoners were also to be employed in the labor of the construction of the penitentiary. These are the laws in virtue of which the United States penitentiary at Ft. Leavenworth was established. Without inquiring more fully into the specific rules of discipline enforced at this institution, there is, in view of the acts of

Congress referred to, some ground for holding that a mere sentence to imprisonment therein implies that hard labor shall be a part of the punishment. But, were it clear that this conclusion could not lawfully be drawn, it does not follow that the petitioner would be entitled to his discharge.

In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149. In this case Bonner was sentenced to imprisonment in a penitentiary for one year. The law prescribing the punishment for the crime of which he was convicted did not permit of imprisonment in a penitentiary. The Supreme Court considered what might be done with him upon his discharge from the custody of the warden of the penitentiary on habeas corpus, in view of the fact that the trial court had jurisdiction of the offense and of the person of the petitioner. The court said:

"The judges of all courts of record are magistrates, and their object should be not to turn loose upon society persons who have been justly convicted of criminal offenses, but where the punishment imposed, in the mode, extent, or place of its execution, has exceeded the law, to have it corrected by calling the attention of the court to such excess. We do not perceive any departure from principle or any denial of the petitioner's right in adopting such a course. He complains of the unlawfulness of his place of imprisonment. He is only entitled to relief from that unlawful feature, and that he would obtain if opportunity be given to that court for correction in that particular. * * * But in a vast majority of cases the extent and mode and place of punishment may be corrected by the original court without a new trial, and the party punished as he should be whilst relieved from any excess committed by the court of which he complains. In such case the original court would only set aside what it had no authority to do, and substitute directions required by the law to be done upon the conviction of the offender."

The court quoted Beale v. Commonwealth, 25 Pa. 11, wherein it was said that "the common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner whose guilt is established by a regular verdict is to escape punishment altogether because the court committed an error in passing the sentence," and added:

"It is true that this language was used in a case pending in the Supreme Court of a state on writ of error; but if then the court would send the case back to have the error, not touching the verdict, corrected and justice enforced, there is the same reason why such correction should be made when the prisoner is discharged on habeas corpus for alleged defects of jurisdiction in the rendition of the judgment under which he is held. The end sought by him—to be relieved from the defects in the judgment rendered to his injury—is secured, and at the same time the community is not made to suffer by failure in the enforcement of justice against him."

It was unnecessary in the case at bar to adopt this course which proceeds upon the theory of an invalid sentence after a valid conviction, and which implies a resumption of jurisdiction by the trial court after the invalid sentence is set aside or vacated.

After the presentation of the petition for the writ of habeas corpus to this court, and before the final hearing thereof, the United States District Attorney for Oklahoma presented a motion to the court in which the petitioner was tried and sentenced that the judgment of sentence be corrected by adding thereto a provision for hard labor, it being claimed by him that the omission of such provision was a

clerical error of the clerk in entering the actual judgment rendered by the court. Seasonable notice of this motion was given to the petitioner. He was removed from the penitentiary at Ft. Leavenworth, Kan., to Oklahoma, and was present in court with his counsel at the hearing of the motion. An authenticated transcript of the proceedings at the hearing of the motion has been furnished this court, and it appears therefrom that convincing proof was adduced by the testimony of officers of the court and the minutes of the judge who tried the case and imposed the sentence that the omission of the words "at hard labor" was the error of the clerk in writing up the record, and that the sentence actually imposed was that of imprisonment at hard labor. The judge of that court thereupon, and on January 21, 1903, made a nunc pro tunc order of correction, and this court and the warden of the penitentiary at Ft. Leavenworth have been furnished with transcripts thereof. The rule authorizing such corrections, at least where indubitable evidence is offered of the errors or omissions, is in consonance with sound reason and well supported by authority.

In Wight v. Nicholson, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. Ed. 865, the petitioner had been sentenced by the District Court of the United States for the Eastern District of Michigan, although the record showed that at the time of the sentence the cause had been transferred to the Circuit Court for that district, and was then pending in that court. This situation came to light during the habeas corpus proceeding, and the Circuit Court found that the existing record was not full and correct, and "upon its own motion, based upon its recollection of the facts," caused a nunc pro tunc entry to be made as of the previous term, remitting the cause back to the District Court on the ground that it had never been lawfully transferred therefrom, and on the corrected record it discharged the writ of habeas corpus. The judgment of the court was affirmed by the Supreme Court.

In Gonzales v. Cunningham, 164 U. S. 612, 17 Sup. Ct. 182, 41 L. Ed. 572, the appellants had been convicted of murder in a district court of New Mexico and sentenced to be executed. The judgment was affirmed in the Supreme Court of the territory. The order of affirmance was set aside, and a rehearing granted, pending which the territory suggested a diminution of the record, and prayed for a certiorari, which was granted; and thereupon at a special called term of the District Court the records thereof were corrected, more than a year after the trial, so as to show what had been theretofore omitted—that the appellants had been duly arraigned upon the indictment, and had pleaded not guilty. The evidence supporting this correction was "the recollection of the presiding judge and certain notes and memoranda deposited with the clerk in pursuance of law." Upon the rehearing and upon the amended record the conviction and sentence was again affirmed by the Supreme Court of the territory. A writ of habeas corpus, which was subsequently granted by that court, was discharged after return and hearing. The order discharging the writ was affirmed by the Supreme Court of the United States upon appeal. See, also, Borrego v. Territory, 8 N. M. 490, 46 Pac. 349.

In Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, the court said:

"It is familiar doctrine that courts always have jurisdiction over their records to make them conform to what was actually done at the time; and, whatever may have been the rule announced in some of the old cases, the modern doctrine is that some orders and amendments may be made at a subsequent term, and directed to be entered and become of record as of a former term. In Rhoads v. The Commonwealth, 15 Pa. 276, Gibson, C. J., said: 'The old notion that the record remains in the breast of the court only till the end of the term has yielded to necessity, convenience, and common sense. Countless instances of amendment after the term, but ostensibly made during it, are to be found in our own books and 'those of our neighbors.' Even judgments may be corrected in accordance with the truth. It has been held by this court that at a subsequent term, when a judgment had before been arrested, an amendment may be made to apply the verdict to a good count, if another be bad, and the minutes of the judge show that the evidence sustained the good one. Matheson's Adm'r v. Grant's Adm'r, 2 How. 282, 11 L. Ed. 261. And this has been repeatedly held elsewhere. Generally, it may be admitted that judgments cannot be amended after the term at which they were rendered, except as to defects or matters of form; but every court of record has power to amend its records so as to make them conform to and exhibit the truth. Ordinarily, there must be something to amend by; but that may be the judge's minutes or notes, not themselves records, or anything that satisfactorily shows what the truth was."

In United States v. Vigil, 10 Wall. 423, 19 L. Ed. 954, a record was corrected two years after it was made, so as to show that an appeal was prayed in open court and granted.

In Kelly v. United States (C. C.) 27 Fed. 616, a record was amended to show the discharge of a jury after a failure to agree upon a verdict at a prior term. The effect of the amendment was to defeat a plea of former jeopardy.

In Hoffman v. State, 88 Wis. 176, 59 N. W. 588, the appellant had been convicted of murder in the third degree. At a subsequent term, and while his appeal was pending in the Supreme Court, the record was amended so as to show his presence in court during the various stages of the trial.

In Bilansky v. State, 3 Minn. 427 (Gil. 313), the court, in referring to the power to make corrective entries, said that the fact that the case was a capital one was in no way a bar to its exercise, but that the court should be inspired with so anxious a solicitude to be right as to insure certainty. In this case the appellant had been convicted of murder, and while his appeal was pending in the Supreme Court the record of the trial court was amended to show affirmatively the swearing of each juror, the placing of the jurors in charge of a sworn officer, and that they were polled upon the coming in of their verdict.

It will serve no useful purpose to make further reference to the authorities upon this question. It is sufficient to say that, while many of the courts deny the power to amend a judgment after the term at which it was rendered, the great weight of authority upholds the power, not to amend the judgment itself, but to make amendatory entries at any time, to the end that the records may speak the truth, and show what actually occurred. There was no attempt in the case at bar to correct an erroneous judgment or to change or alter the actual judgment of the court in any particular after the expiration

of the term at which it was rendered. What was done was merely to make the records of the territorial court speak the truth as established by conclusive evidence heard in the presence of the party affected thereby. The judgment which was in fact rendered embraced hard labor as a part of the punishment of the petitioner. He is enduring no other or different punishment than that authorized by the law applicable to his case and that actually imposed by the court under the law.

The objection of the petitioner that the territorial court did not have jurisdiction of his case has been examined, and found untenable. The case of United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631, which was cited in his behalf upon this point, is adverse to his contention.

The petition for the writ of habeas corpus will be denied.