# GONZALES *v.* CUNNINGHAM.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 643. Submitted December 7, 1896. — Decided December 21, 1896.

An appeal lies to this court from a final order of the Supreme Court of the Territory of New Mexico, ordering a writ of *habeas corpus* to be discharged.

The cases deciding that there is a want of jurisdiction over a similar judgment rendered in the District of Columbia are reviewed, and it is held that the legislation in respect of the review of the final orders of the territorial Supreme Courts on *habeas corpus* so far differs from that in respect of the judgments of the courts of the District of Columbia, that a different rule applies.

Section 1852 of the Compiled Laws of New Mexico of 1884 which provides that "when any justice of the Supreme Court shall be absent from his district, or shall be in any manner incapacitated from acting or performing any of his duties of judge or chancellor, in his district, or from holding court therein, any other justice of the Supreme Court may perform all such duties, hear and determine all petitions, motions, demurrers, grant all rules and interlocutory orders and decrees, as also all extraordinary writs in said district," was within the legislative power of the assembly which enacted it, and is not inconsistent with the provision in the act of July 10, 1890, c. 665, 26 Stat. 226, for the assignment of judges to particular districts, and their residence therein; and while, for the convenience of the public, it was provided in the organic act, that a justice should be assigned to each district and reside therein, there was no express or implied prohibition upon any judge against exercising the power in any district other than the one to which he had been assigned, and there was nothing in the language of the provision requiring such a construction as would confine the exercise of the power to the particular justice assigned to a district when he might be otherwise incapacitated.

In that territory a trial judge may continue any special term he is holding until a pending case is concluded, even if the proceedings of the special term are thereby prolonged beyond the day fixed for the regular term.

APPELLANTS were indicted at the June, A.D. 1894, term of the District Court for the county of Santa Fé, New Mexico, in the first judicial district of that Territory, for the murder of one Francisco Chaves. On the fourth of March, A.D.

1895, Hon. N. B. Laughlin, associate justice of the Supreme Court of the Territory of New Mexico, assigned to the first judicial district thereof, the regular December term of the court not having been held, convened " a special term of the District Court for the county of Santa Fé in and for the first judicial district in and for the Territory of New Mexico," to be begun on March 18, 1895, " for the term of four consecutive weeks, and for such further time as in the discretion of the judge of said court may be deemed proper and necessary for the disposition of any business now pending in said court or that may come before it in the usual course of business of said court and as provided by law."

The indictment coming on for trial, April 23, 1895, the following order was entered:

" Now comes the said plaintiff, by her attorney, J. H. Crist, Esquire, and the said defendants come in their own proper person, attended by their counsel, Catron & Spiess, and the judge of the court, Honorable N. B. Laughlin, considering himself disqualified from presiding at the trial of this cause owing to the fact of his having been connected with the prosecution herein previous to his appointment as judge, resigns the bench to the Honorable H. B. Hamilton, associate justice of the Supreme Court of the Territory of New Mexico and judge of the fifth judicial district court thereof; thereupon the said district attorney, on behalf of said Territory, and T. B. Catron, Esquire, on behalf of said defendants, agree that no objections shall be hereafter raised in case the Honorable N. B. Laughlin remains within this judicial district during the trial of this cause, and thereupon, a jury not having been obtained for the trial of this cause, the jurors already called are placed in the custody of the sheriff of the county of Santa Fé until to-morrow morning at ten o'clock."

The trial of the case commencing on that day continued until May 29, 1895, when the jury found the defendants guilty as charged in the indictment, and, motions in arrest of judgment and for new trial having been submitted and denied, judgment was entered on the verdict, and defendants sentenced to be executed. To review this judgment and

sentence defendants sued out a writ of error from the Supreme Court of the Territory, and the judgment was affirmed, September 1, 1896. 46 Pac. Rep. 349. The order of affirmance was set aside September 4, and a rehearing granted, and thereupon the Territory suggested diminution of the record and prayed for a *certiorari*, which was issued. On the ninth of September, Judge Laughlin convened a special term of the District Court in and for the county of Santa Fé, to be begun September 21, for the term of two consecutive weeks, or such further time as might be deemed necessary, "for the purpose of hearing and determining all causes that may be pending in said court, both civil and criminal, and any business pending in said court or that may come before it in the usual course of business of said court will be taken up and acted upon and disposed of in the same manner as at a regular term of said court and as provided by law."

On September 22, 1896, in the said special term, Judge Hamilton presiding, the motion of the Territory of New Mexico for an order directing the clerk "to make a proper and sufficient entry in the records of the proceedings of this court had on the 23d day of April, 1895, of the arraignment in said court at said time of the said defendants above named, upon the indictment in said cause, and of their respective pleas of not guilty thereto," came on to be heard, and it appearing to the court from evidence adduced, the recollection of the presiding judge, and certain notes and memoranda deposited with the clerk in pursuance of law, that the record "is not a full and correct record of the proceedings had in said court upon said date in said cause," in that the record failed to show the arraignment of the defendants and their respective pleas of not guilty, it was ordered "that the said proceedings be entered now upon the records of this court in this cause as of the 23d day of April, 1895, according to the facts thereof"; and the arraignment and pleas were set forth in said order. This order, together with the order convening the special term at which it was entered, having been returned to the Supreme Court of the Territory, that court on September 24, 1896, the cause coming on to be heard

on the rehearing, "and upon the amended record," again affirmed the judgment and sentence of the District Court, and fixed a day of execution. 46 Pac. Rep. 361. Thereupon the defendants, plaintiffs in error, on the same day filed a petition in the Supreme Court of the Territory of New Mexico for a writ of *habeas corpus*, alleging, among other things, that they were unlawfully restrained of their liberty pursuant to the judgment of the District Court of the first judicial district of New Mexico sitting within the county of Santa Fé, inasmuch as the District Court was without jurisdiction to render the judgment, the verdict and judgment thereon being *coram non judice*, because the special term of the District Court at which they were rendered overreached and conflicted with the regular terms of the court; the record did not show that defendants had been arraigned and the amendment was improperly made; the judge of the fifth judicial district court had no power or authority to preside over the first judicial district court, and that his acts, while so presiding, were absolutely null and void. The writ of *habeas corpus* was issued, and on consideration of the sheriff's return to the writ, and the petitioners' answer thereto, it was ordered that the writ be discharged and the petitioners remanded to custody to be dealt with in pursuance of the judgment, conviction and sentence. From this order petitioners prayed an appeal, which was denied for reasons then stated. *In re Gonzales*, 46 Pac. Rep. 211. Subsequently an appeal was allowed by one of the justices of this court.

*Mr. Solicitor General, Mr. John P. Victory,* Solicitor General of New Mexico, and *Mr. H. L. Warren* for the motion to dismiss or affirm.

*Mr. Thomas B. Catron, Mr. Samuel Field Phillips* and *Mr. Frederick D. McKenney* opposing.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

This is a motion to dismiss the appeal on the ground that

appeals will not lie to this court from final orders of the Supreme Courts of the Territories on *habeas corpus;* and a motion in the alternative to affirm the final order sought to be reviewed because so manifestly correct that the appeal must be regarded as taken for delay only.

In *Cross* v. *Burke*, 146 U. S. 82, it was held that we had no jurisdiction over the judgments of the Supreme Court of the District of Columbia in this class of cases. The statutes in relation to *habeas corpus* were there reviewed, and it is not necessary to go over them again in detail.

By section 763 of the Revised Statutes it was provided that an appeal to the Circuit Court might be taken from decisions on *habeas corpus:* (1) In the case of any person alleged to be restrained of his liberty in violation of the Constitution or of any law or treaty of the United States; (2) in the case of the subjects or citizens of foreign States, when in custody, as therein set-forth. By section 764 an appeal from the Circuit Court to this court might be taken in "the cases described in the last clause of the preceding section."

Section 705 of the Revised Statutes read: "The final judgment or decree of the Supreme Court of the District of Columbia, in any case where the matter in dispute, exclusive of costs, exceeds the value of one thousand dollars, may be reexamined and reversed or affirmed in the Supreme Court of the United States, upon writ of error or appeal, in the same manner and under the same regulations as are provided in cases of writs of error on judgments, or appeals from decrees rendered in a Circuit Court."

Section 846 of the Revised Statutes of the District of Columbia was as follows: "Any final judgment, order or decree of the Supreme Court of the District may be reëxamined and reversed or affirmed in the Supreme Court of the United States, upon writ of error or appeal, in the same cases and in like manner as provided by law in reference to the final judgments, orders and decrees of the Circuit Courts of the United States."

On February, 25, 1879, an act was passed which provided: "The final judgment or decree of the Supreme Court of the

District of Columbia in any case where the matter in dispute, exclusive of costs, exceeds the value of twenty-five hundred dollars, may be reëxamined and reversed or affirmed in the Supreme Court of the United States, upon writ of error or appeal, in the same manner and under the same regulations as are provided in cases of writs of error on judgments or appeals from decrees rendered in the Circuit Court." 20 Stat. 320, c. 99, § 4.

By act of Congress of March 3, 1885, 23 Stat. 437, c. 353, § 764 of the Revised Statutes was so amended as to remove the restriction to the second clause of § 763, and restore the appellate jurisdiction of this court from decisions of the Circuit Courts in *habeas corpus* cases as it had existed prior to the passage of the act of March 27, 1868. 15 Stat. 44, c. 34. But this did not have that effect as to judgments of the Supreme Court of the District of Columbia in those cases for the reasons given in *In re Heath*, 144 U. S. 92; *Cross* v. *Burke*, 146 U. S. 82.

On the same third of March, A.D. 1885, Congress passed an act "regulating appeals from the Supreme Court of the District of Columbia and the Supreme Courts of the several Territories." 23 Stat. 443, c. 355. The first section of this act provided "that no appeal or writ of error shall hereafter be allowed from any judgment or decree in any suit at law or in equity in the Supreme Court of the District of Columbia, or in the Supreme Court of any of the Territories of the United States, unless the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars"; and the second section, that the first section should not apply to any case "wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of or an authority exercised under the United States; but in all such cases an appeal or writ of error may be brought without regard to the sum or value in dispute." We have repeatedly decided that this act did not apply, in either section, to any criminal case, and that it was only applicable to judgments and decrees in suits at law or in equity in which there was a pecuniary matter in dispute.

Hence, that, as it was well settled that a proceeding in *habeas corpus* was a civil and not a criminal proceeding, and was only availed of to assert the civil right of personal liberty, the matter in dispute had no money value, and an appeal would not lie. *Cross* v. *Burke*, 146 U. S. 82; *Farnsworth* v. *Montana*, 129 U. S. 104; *United States* v. *Sanges*, 144 U. S. 310, 320; *Washington & Georgetown Railroad* v. *District of·Columbia*, 146 U. S. 227; *In re Lennon*, 150 U. S. 393, 397; *In re Chapman, Petitioner*, 156 U. S. 211, 215; *In re Belt, Petitioner*, 159 U. S. 95, 100; *Chapman* v. *United States*, 164 U. S. 436; *Perrine* v. *Slack*, 164 U. S. 452.

The Supreme Court of New Mexico declined to allow an appeal in this case because of the rule laid down in *Cross* v. *Burke* and in *In re Lennon, supra*, and it may be admitted that the view that an appeal would not lie might well have been entertained. But we think that the legislation in respect of the review of the final orders of the Territorial Supreme Courts on *habeas corpus* so far differs from that in respect of the judgments of the courts of the District of Columbia that a different rule applies.

It will be perceived that the revision of the final judgments or decrees of the Supreme Court of the District depended on the provision that they should be so reëxaminable in the same cases and in like manner as the final judgments of the Circuit Courts of the United States, and that there was no special provision in relation to the review of final orders of such courts on *habeas corpus*.

Sections 702 and 1909 of the Revised Statutes are as follows:

" Sec. 702. The final judgments and decrees of the Supreme Court of any Territory, except the Territory of Washington, in cases where the value of the matter in dispute, exclusive of costs, to be ascertained by the oath of either party, or of other competent witnesses, exceeds one thousand dollars, may be reviewed and reversed or affirmed in the Supreme Court, upon writ of error or appeal in the same manner and under the same regulations as the final judgments and decrees of a Circuit Court. . . ."

"SEC. 1909. Writs of error and appeals from the final decisions of the Supreme Court of either of the Territories of New Mexico, Utah, Colorado, Dakota, Arizona, Idaho, Montana and Wyoming, shall be allowed to the Supreme Court of the United States, in the same manner and under the same regulations as from the Circuit Courts of the United States, where the value of the property or the amount in controversy, to be ascertained by the oath of either party, or of other competent witnesses, exceeds one thousand dollars, except that a writ of error or appeal shall be allowed to the Supreme Court of the United States from the decision of the Supreme Courts created by this title, or of any judge thereof, or of the District Courts created by this title, or of any judge thereof, upon writs of *habeas corpus* involving the question of personal freedom."

This section was one of those under title 23, "The Territories," and the exception was brought forward from section 10 of the organic law of New Mexico, approved September 9, 1850. 9 Stat. 446, 449, c. 49.

As to the Supreme Court of the District of Columbia, its final judgments, orders and decrees were reviewable by this court on writ of error or appeal by section 705 of the Revised Statutes, and section 846 of the Revised Statutes of the District, in the same cases and in like manner as provided by law in reference to the final judgments, orders and decrees of the Circuit Courts of the United States, and there was no mention of final orders on *habeas corpus;* but as to the Supreme Courts of the Territories, the right of appeal in *habeas corpus* was given in addition by the special provision of section 1909 of the Revised Statutes. When the Revised Statutes and the Revised Statutes of the District were approved, both on the same day, June 22, 1874, appeals could not be taken from the decisions of Circuit Courts on *habeas corpus* except in the instance of the subjects or citizens of foreign States; and the act of March 3, 1885, c. 353, 23 Stat. 437, restoring the appellate jurisdiction of this court in respect of final decisions of the Circuit Courts on *habeas corpus* in cases of persons alleged to be restrained of their liberty in

violation of the Constitution or any law or treaty of the United States, did not operate to give the same right of appeal to the courts of the District of Columbia. And then the second act of March 3, 1885, c. 355, 23 Stat. 443, came in to furnish the exclusive rule as to appeals and writs of error to review the final judgments and decrees of the courts of the District. And this would have been equally true as to the courts of the Territories if jurisdiction had depended solely on § 702 of the Revised Statutes; but under section 1909 an appeal would lie to this court from the decisions of the Territorial Supreme Courts on *habeas corpus* when it would not lie from Circuit Courts or courts of the District of Columbia in like case, and the question on this record as to the right of appeal is whether Congress intended to repeal that special provision as to final orders on *habeas corpus* by including the Supreme Courts of the Territories in the act of March 3, 1885, c. 355. The intention to do so is not expressed, and repeals by implication are not favored. The act covered substantially the entire ground as to the District of Columbia as the statutes stood, but while it might be fairly argued that it did so as to the Territories, it does not necessarily follow that the exception in respect of final orders on *habeas corpus* was designed to be affected. The act has its obvious field of operation without being assumed to be in every respect a substitute for the earlier law in relation to the Territories, and since the last clause of § 1909 was directed to a special object and applicable to particular cases, we think it may properly be held that the act of March 3, 1885, had only general cases in view, and that it was not intended to do away with the special provision. Indeed, it was distinctly ruled in *In re Snow*, 120 U. S. 274, that an appeal would lie under section 1909 from a final order entered in 1886 on *habeas corpus* by the Supreme Court of the Territory of Utah; and this notwithstanding the act of March 3, 1885, c. 355, which was quoted and referred to in *Snow* v. *United States*, 118 U. S. 346. Jurisdiction was also entertained of such an appeal in *Nielsen, Petitioner*, 131 U. S. 176, from a final order of a District Court of the Territory of Utah and in *In re Delgado, Petitioner*, 140

U. S. 586, from a final order of a District Court of New Mexico.

This result is not affected by the judiciary act of March 3, 1891, c. 517, 26 Stat. 826. *Shute* v. *Keyser*, 149 U. S. 649; *Folsom* v. *United States,* 160 U. S. 121; *In re Lennon*, 150 U. S. 393; *In re Heath*, 144 U. S. 92.

But although the motion to dismiss for want of jurisdiction will be overruled, we are of opinion that the motion to affirm must be sustained. The general rule is well established that a writ of *habeas corpus* cannot be used to perform the office of a writ of error, and that this doctrine applies not only to original writs of *habeas corpus* issued by this court, but on appeals to it from courts below in *habeas corpus* proceedings. *In re Schneider*, 148 U. S. 162; *Benson* v. *McMahon*, 127 U. S. 457, 461, 462; *Stevens* v. *Fuller*, 136 U. S. 468, 478.

The contention here is that the proceedings before Judge Hamilton were *coram non judice* and void because, being the member of the Supreme Court assigned to the fifth district, he could not exercise judicial power in the first district.

By § 1851 of the Revised Statutes, it was provided that "the legislative powers of every Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States."

By § 1865, that "every Territory shall be divided into three judicial districts; and a District Court shall be held in each district of a Territory by one of the justices of the Supreme Court, at such time and place as may be prescribed by law, and each judge, after assignment, shall reside in the district to which he is assigned."

By § 1874, that "the judges of the Supreme Court of each Territory are authorized to hold court within their respective districts, in the counties wherein, by the laws of the Territory, courts have been or may be established, for the purpose of hearing and determining all matters and causes except those in which the United States is a party."

Section 1907 provided that "the judicial power in New Mexico, Utah, Washington, Colorado, Dakota, Idaho, Mon-

tana and Wyoming shall be vested in a Supreme Court, Dis-
trict Courts, Probate Courts and in justices of the peace."

These provisions, *mutatis mutandis*, were contained in the
organic law of New Mexico.

The number of judges of that Territory having been raised
to five, it was provided by an act of July 10, 1890, c. 665, 26
Stat. 226 : " Sec. 3. That the said Territory shall be divided
into five judicial districts, and a District Court shall be held
in each district by one of the justices of the Supreme Court,
at such time and place as is or may be prescribed by law.
Each judge, after assignment, shall reside in the district to
which he is assigned.   Sec. 4. That the present Chief Justice
and his associates are hereby vested with power and authority,
and they are hereby directed, to divide said Territory into five
judicial districts, and make such assignments of the judges
provided for in the first section of this act as shall in their
judgment be meet and proper."

Section 1852 of the Compiled Laws of New Mexico of 1884
is as follows : " When any justice of the Supreme Court shall
be absent from his district, or shall be in any manner incapaci-
tated from acting or performing any of his duties of judge
or chancellor, in his district, or from holding court therein,
any other justice of the Supreme Court may perform all such
duties, hear and determine all petitions, motions, demurrers,
grant all rules and interlocutory orders and decrees, as also all
extraordinary writs in said district."

It appears to us that this enactment was within the power
of the legislative assembly under the Revised Statutes, and
that it is not inconsistent with the provision for the assign-
ment of the judges to particular districts and their residence
therein.

By the organic act and the Revised Statutes, the whole of
the judicial power of the Territory was vested in the Supreme
Court, District and Probate Courts and justices of the peace ;
and the Supreme Court and District Courts possessed common
law and chancery jurisdiction.   The Supreme Court of the
Territory held that the judicial power which was thus vested
in plenary terms in the District Courts was to be exercised in

each district " by one of the justices of the Supreme Court," and that the organic law did not require that it should be exercised by any particular one of the justices ; that while for the convenience of the public it was provided that a justice should be assigned to each district and reside therein, there was no express or implied prohibition upon any judge against exercising the power in any district other than the one to which he had been assigned ; and that there was nothing in the language of the provision requiring such a construction as would confine the exercise of the power to the particular justice assigned to a district when he might be otherwise incapacitated. 46 Pac. Rep. 363. We concur in these views, and are unable to perceive any want of jurisdiction on the part of the District Court in the proceedings had against petitioners, or any violation of the Constitution or laws of the United States in that regard.

And this disposes of the objection that the amendment of the record so as to show the arraignment and pleas of defendants was improvidently made. Jurisdiction existed, and the action of the District Court and its recognition by the Supreme Court were in accordance with the rule as to entries *nunc pro tunc. In re Wight,* 134 U. S. 136; *United States* v. *Vigil,* 10 Wall. 423.

It is insisted, however, that jurisdiction to render the judgment was lacking because of the expiration of the special term or its termination by conflict with the regular terms of the District Court before the trial was concluded.

The sections of the compiled laws of New Mexico of 1884 bearing on this subject and the first section of the Territorial act of February 22, 1893 (Laws New Mex. 1893, p. 51, c. 34), are given in the margin.[1]

---

[1] " § 543. The terms of the district courts shall be held in the several counties of this Territory, beginning at the times hereinafter fixed and continuing until adjourned by order of the court. . . ."

" § 551. Whenever any regular term of the district court for any county in this Territory shall for any cause fail to be held, the judge of the district in which such failure shall have taken place, or, in the absence of any such resident judge, then any district judge in this Territory, if he deem it advisable and necessary to hold a special term of said court for such county, may order a special term to be held at the court-house of said

These compiled laws were prepared by a commission author-ized to make " a careful and accurate compilation of all of the laws; general, local and private, which shall be in force on the fifth day of May, 1884," and the commissioners were careful, as they say in the preface to their work, to avoid "making changes in any original law." The compilation of general laws embraced the revision of 1865 and the session laws thereafter. Section 553 was taken from section four of chapter eighteen of the revised laws of 1865, the chapter em-bodying the previous law of January 13, 1862. Section 552 was section three of chapter twenty-six of the laws of 1874, approved January 3, and section 552a was section three of chapter twenty-seven of the laws of 1874, approved January 6. Laws 1874, pp. 47, 49. The compilation of 1884 was pub-lished in accordance with the act authorizing it to be made.

June 14, 1858, Congress passed an act, carried forward as § 1874 of the Revised Statutes, providing " that the judges of the Supreme Court of each Territory of the United States are hereby authorized to hold court within their respective districts, in the counties wherein, by the laws of said Territories, courts

---

county at a certain time to be specified in said order, which shall be made in writing, and filed with the clerk of such district court, and a copy thereof posted up at the court-house door of the said county at least ten days previous to the time specified for holding said special term.

" § 552. The respective district judges are hereby authorized at any time, to hold special terms of the district court in any county of their judicial districts, when a term thereof in said county may have failed : *Provided,* Said special term shall not conflict with a term of said district court in any other county in the same judicial district. Said terms to be called in the same manner now provided by law for the holding of special terms of the district courts in this Territory.

" § 552a. When in the discretion of the judge of any district court, a furtherance of justice may require it, a special term of the district court may be held in any county of his district; which said special term may be called in the same manner now provided by law for the calling of special terms, and any business at the time pending in said court, or that may come before it in the usual course of business of the court, may be taken up, and acted upon, and disposed of in the same manner as at a regular term of said court.

" § 553. Any special term of the district court that may be ordered under the provisions of this act, shall be held for the purpose of hearing and

have been or may be established, for the purpose of hearing and determining all matters and causes, except those in which the United States is a party: *Provided*, That the expenses thereof shall be paid by the Territory, or by the counties in which said courts may be held, and the United States shall in no case be chargeable therewith." 11 Stat. 366, c. 166. Accordingly terms of court in the several counties were duly provided for by the Territorial legislature, and these terms in the counties in the first judicial district were fixed by the first section of the Territorial act of February 22, 1893.

By other sections than those before given, it was provided that District Courts in the several counties in which they might be held should have power and jurisdiction of all criminal cases that should not otherwise be provided for by law; of all criminal cases that might originate in the several counties, which according to law belong to the District Courts, or that might be presented by indictment, information or appeal; and that the costs, charges and expense of holding and maintaining the District Courts and the costs in causes determined against the Territory should be paid by the Territory. Comp. Laws, 1884, §§ 531, 532, 540.

---

determining all causes that may be depending in said court, both civil and criminal, and may continue in session the same length of time that is allotted to the regular term of court for such county and no longer."

" § 557. It shall be the duty of the attorney-general of this Territory, to attend all such special terms of the district court, having been duly notified thereof, or provide that some one learned in the law shall attend for him, and the said attorney-general or his deputy, shall be required to perform the same duties at such special term, as he is required by law to perform at the regular terms of the district court, . . ."

" An act to fix the time of holding the district courts." Approved February 22, 1893.

" SECTION 1. The terms of the district court hereafter to be held in the counties of Santa Fé, San Juan, Rio Arriba and Taos shall be held in said counties beginning at the times hereinafter fixed and continuing until adjourned by order of the court, to wit:

" In the county of San Juan, on the third Mondays in April and October.

" In the county of Rio Arriba, on the first Mondays in May and November.

" In the county of Taos, on the third Mondays in May and November.

" In the county of Santa Fé, on the second Mondays in June and December."

By section 20 of chapter 61 of the acts of 1893 the respec-
tive counties of the Territory were required to provide for the
expenses of the District Courts by levy of taxes as therein
prescribed. Laws 1893, p. 108.

The Supreme Court of the Territory held that the require-
ment that the respective counties should provide for the ex-
penses of their District Courts under this section, which we
have not felt called upon to set forth *in extenso*, practically
inhibited terms in counties in which there were no funds, and
declared that it had been a frequent consequence of this
system that courts could not be and were not held in some
of the counties at the time fixed by the statute. The laws of
New Mexico contained the usual provision for adjournment of
terms. to terms in course on the non-attendance of the judge
(§ 537), and it was not contended here that in fact regular
terms of the District Court were held in the county of San
Juan in April, in the county of Rio Arriba in May, and in
the county of Taos in May, while the special term was in
session. From the various provisions of the acts referred to,
it appears that no specific duration of either regular or special
terms was prescribed by law, but that they were subject, when
lawfully commenced, to be continued until adjourned by order
of court, and that therefore they could not be necessarily
determined by the advent of the particular days designated
for the commencement of regular terms; and that special
terms might be ordered when regular terms failed to be held,
and also whenever in the discretion of the judge of any Dis-
trict Court a furtherance of justice required it.

Under section 552, which was section 3 of chapter 26 of
the laws of 1874, when special terms were held because the
regular term had failed, it was provided that any such special
term should not conflict with the regular term in any other
county in the same judicial district, that is, that it should not
be so called as to produce a conflict or be held in actual con-
flict; while by section 3 of chapter 27 of the laws of 1874,
being section 552a, no specific limitations were imposed in
respect of a special term called thereunder. There was noth-
ing in any of these provisions which controlled the discretion

of the trial judge in continuing any special term he may have been holding until a pending case was concluded, and nothing which operated to invalidate the proceedings of such special term because prolonged beyond the day fixed for a regular term. Jurisdiction did not depend on the stroke of the clock. *Election cases,* 65 Penn. St. 20; *Briceland v. Commonwealth,* 74 Penn. St. 463; *Mechanics' Bank* v. *Withers,* 6 Wheat. 106; *Maish* v. *Arizona,* 164 U. S. 599.

This trial was commenced on April 23, 1895, which was, as the record declared, the thirty-second day of the special term, which had commenced March 18, and was concluded on May 29, 1895, the sixty-third day of said special term, by the return of a verdict of guilty. The motions for new trial and in arrest were denied, and the sentence pronounced on June 15, 1895, one of the days of the regular term of the District Court, the postponement to that day having been granted on the request of defendants. Under these circumstances the proceedings in any view cannot be held void for want of jurisdiction. *McDowell* v. *United States,* 159 U. S. 596.

*Order affirmed.*