[No. 1398, May 7, 1912.]

JAMES M. MAYES, et al., Plaintiffs in Error, v. W. G. BASSETT, et al., Defendants in Error.

## SYLLABUS.

1. Congress and the legislature intended that the District Courts of the Territory should be open at all times and that any Associate Justice of the Supreme Court might preside over such court to effectuate such purpose.

2. Held: That an order signed by an Associate Justice of the Territorial Supreme Court, in a district other than his own, reciting that such judge was acting in the absence of the presiding judge, sufficiently discloses the authority of such judge.

3. All laws enacted at the same session of the legislature relating to the same subject matter are in pari materia, and are to be considered and construed together as if they were different sections of one act.

4. The provisions of sec. 1581, Comp. Laws of 1897, are applicable to and binding upon Boards of School Directors as well as Boards of Education.

5. Where a statute requires sealed proposals and letting of contract for public buildings to lowest responsible bidder, a reasonable public notice is implied from the requirements of the statute.

Writ of Error to Union County.

H. L. BICKLEY and J. LEAHY, for Plaintiffs in Error.

The injunction should have been dissolved at the first hearing for the reasons set out in the motion to dissolve, and which is the first error assigned, because the petition was wholly insufficient to give the court jurisdiction to issue the temporary writ, and because the judge issuing the temporary writ had no jurisdiction of the subject matter or of the parties to the action at the time the order was made, and the jurisdiction of the court nowhere appeared of record in the case, which was a necessary prerequisite. 13 Cent. Dig. column 1949, sec. 134; 23 Cyc. 559; Faust v. Commonwealth, 33 Pa. St. 338; U. S. Stat. at Large, secs. 1851, 1866, 1910, 1918, 1874, 1913, 1915; Comp. Laws N. M. 1897, secs. 882, 906, 2901 and 2875; sub-sec. 296 N. M. Code, Chap. 107, Session Laws 1897; Borrego v. Cunningham, 8 N. M. 446; Lincoln Lucky Co. v. Dist. Court, 7 N. M. 486; McDowell v. U. S., 40 L. Ed. 271; Grafton Bank v. Bickford, 79 Mass. 564; Wallace v.

Helena El. Ry. Co. 25 Pac. 278; Ellis et al. v. Harris, et al. 57 S. W. 984; Bank of U. S. v. Voorhes, 9 L. Ed. 490; In re Steven's estate, 23 Pac. 379.

Section 1581 had no reference whatever to the Board of School Directors, such as the plaintiffs in error were. Sec. 1581, Comp. Laws 1897; Chap. 119, sec. 7, Laws 1903; Chap. 97, Laws 1907.

Section 1581 does not in language require any advertisement for bids but simply requires the Board of Education before letting a contract, to receive sealed bids and let the contract to the lowest responsible bidder. Worthington v. City of Boston, 152 U. S. 603; Fitzgerald et al. v. Walker, 17 S. W. 702; Kingsley v. City of Brooklyn, 78 N. Y. 200; City of Augusta v. McKibben, 60 S. W. 291; Amer. & Eng. Ency. of Law, vol. 20, pp. 1165-1167; same, vol. 26, p. 598 to 600; Santa Rosa Light Co. v. Goodrich, 50 Pac. 1025; Elect. Lt. & P. Co. v. San Bernardino, 34 Pac. 819; Warren et al. v. Barber Co., 22 S. W. 490.

## STATEMENT OF FACTS.

The defendants in error, who were plaintiffs below filed their petition in the District Court of Union County within the Fourth Judicial District of the Territory of New Mexico, on March 26th, 1910, for the purpose of restraining James M. Mayes, Rafael Savedra and Albert W. Farr, who were school directors of School District No. 22, from building a school house in said district, pursuant to a contract made with C. M. Williams, and to restrain Joseph Gill, school superintendent, from approving any school warrant issued by said directors in payment for said building, and to restrain Robert Q. Palmer, county treasurer of said county, from paying any such warrant.

Upon the filing of said petition an injunction was issued by Hon. John R. McFie, Associate Justice of the Supreme Court of the Territory of New Mexico, and judge of the First Judicial District Court thereof, restraining said Mayes, Saverdra and Farr, as such school directors, from carrying out said contract, and restraining said Williams, the contractor, from continuing the building, and restraining said Gill and Palmer from approving or paying any

warrants issued in payment to such builder. The restrain-ing order was signed by "John R. McFie, Associate Jus-tice," without designating what court, or the location of the court, of which he was said associate justice.

Said restraining order cited said defendants below, now plaintiffs in error, to appear before the District Court of Union County, at Raton, on the 7th day of April, 1910, then and there to show cause why the temporary writ of injunction should not be made permanent.

The summons was signed by the clerk of the Fourth Judicial District of New Mexico, but was blank as to the authority given by the judge, the reason being that there was no presiding judge at that time in and for the Fourth Judicial District of New Mexico, wherein Union County was situate.

To this petition and order to show cause, the defendants below, now plaintiffs in error, filed their motion to dissolve the injunction, the same being now a part of the record, for the reasons therein disclosed.

Upon the petition and this motion to dissolve a hearing was had before said Hon. John R. McFie, at Raton, on April 7, 1910, and the plaintiffs below asked leave to file an amended petition which was then and there granted, and defendants below again cited to appear and show cause April 19, 1910, to which ruling, order and judgment of the court defendants below duly excepted.

Defendants in error filed an amended petition, and to this plaintiffs in error filed a supplementary motion to dis-solve the injunction, and also filed an answer to the amend-ed petition, which answer was made a part of the supple-mentary motion, the answer denying every material allega-tion of the amended petition, and was duly verified, and prayed that the injunction be dissolved, the action dis-missed and for damages, with costs of suit.

Upon these new issues a hearing was had at Las Vegas, New Mexico, before Hon. Frank W. Parker, Associate Jus-tice of the Supreme Court of New Mexico, and judge of the Third Judicial District Court, whilst he was holding court at Las Vegas, in said Fourth Judicial District, there being no presiding judge of said Fourth Judicial District

at the time. A final decree was rendered herein by Judge Parker, and from this decree plaintiffs in error sued out a writ of error before the clerk of the Supreme Court, bringing the case to this court on error.

### OPINION (BY THE COURT.)

HANNA, J.—The defendant in error has filed no brief in this court, and we have been under the necessity of engaging in an unusual amount of research work to arrive at a correct conclusion with respect to the several important questions raised in this case.

The first assignment of error, relied upon by plaintiff in error, is that the injunction should have been dissolved at the first hearing, because the petition was wholly insufficient to give the court jurisdiction to issue the temporary writ; because the judge issuing the temporary writ had no jurisdiction of the subject matter, or of the parties to the action at the time the order was made; because the jurisdiction of the court nowhere appeared of record in the case.

Considering the several grounds of this assignment of error, in their order, we are of the opinion the trial court did have jurisdiction to issue the temporary writ. The court found that the petitioners were resident citizens and tax payers of School District No. 22, of Union County, and an examination of the record discloses the pleading of all other necessary jurisdictional facts.

The alleged lack of jurisdiction in the judge, issuing the temporary writ, over the subject matter and the parties, raises a question with respect to the jurisdiction of territorial district judges in districts other than those to which they were assigned while acting in such districts after the expiration of the term of the presiding judge of such district, and prior to the assignment of a new judge to said district.

Sec. 882 of the Compiled Laws of 1897 provides as follows:

"When any judge of any district court shall be absent from his district, or shall be in any manner incapacitated from performing any of his duties as such judge, any other

district judge in the territory may perform any and all such duties for him the same as he might do if present or able to act: *Provided,* That nothing herein contained shall be held to require that such other district judge must come within the district of the judge for whom he is acting before he can properly perform such duties as aforesaid."

It is apparently urged that this provision of our statutes will not apply to a case arising through vacancy in the office of presiding judge.

It has been said that "vacancy" as applied to an office has no technical meaning. An office is not vacant so long as it is supplied in the manner provided by the constitution, or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant, in the eyes of the law, whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event. Collins v. State, 8 Ind. 344-350; People v. Tilton, 37 Cal. 614-617; Pruitt v. Squires, 68 Pac. 643.

We find in sec. 2901 of the Compiled Laws of 1897 further provision in this connection.

Sec. 2901. "When any justice of the Supreme Court shall be absent from his district, or shall be in any manner incapacitated from acting or performing any of his duties of judge or chancellor in his district, or from holding court therein, any other justice of the Supreme Court may perform all such duties, hear and determine all petitions, motions, demurrers, grant all rules and interlocutory orders and decrees, as also all extraordinary writs in said district."

From these two statutory provisions we are clearly of the opinion that it was the intention of the legislature to cover all circumstances that might prevent, or disqualify, any presiding judge from exercising the duties of his office.

In the case of Francisco Gonzales y Borrego, et al., v. Territory of New Mexico, 8 N. M. 446-495, the Territorial Supreme Court, referring to the provisions of the Act of Congress of Sept. 9, 1850, used the following language:

"It will be noted that the judicial power which is thus

vested in plenary terms in the district courts is to be exercised in each district 'by one of the justices of the supreme court.' It does not require that it shall be exercised by any particular one of the justices; and while, for the convenience of the public, a judge is to be assigned to each district, who is required to reside therein, there is no express or implied prohibition upon any judge against exercising power in any district not the one to which he has been assigned. There is nothing in the language of that clause requiring such a construction as will confine the exercise of the power to the particular justice assigned to the district, when that person is otherwise incapacitated."

We are constrained to believe that Congress and the Legislature, in the necessary purpose of providing for the prompt administration of justice, intended that the District Courts of the Territory should be open at all times and that any Associate Justice of the Supreme Court might preside over such Court to effectuate such purpose.

The Supreme Court of the United States in the case of Francisco Gonzales y Borrego et al. v. William P. Cunningham, Sheriff of Santa Fe County, 164 U. S. 612, 41 U. S. Law Ed. 572, considered the sources and history of the legislation pertaining to this question of jurisdiction of associate justices of the Territorial Supreme Court. The importance of this question and its effect upon recent litigation in the Fourth District will justify our lengthy quotation from this case. The Honorable Chief Justice Fuller in his opinion in this case said:

"The contention here is that the proceedings before Judge Hamilton were coram non judice and void because, being the member of the Supreme Court assigned to the Fifth district, he could not exercise judicial power in the First district.

"By U. S. Rev. Stat. sec. 1851, it was provided that 'the legislative powers of every territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States.'

"By U. S. Rev. Stat. sec. 1865, that 'every territory

shall be divided into three judicial districts; and a dis-
trict court shall be held in each district of a territory
by one of the justices of the supreme court at such time
and place as may be prescribed by law, and each judge,
after assignment, shall reside in the district to which he
is assigned.'

"By U. S. Rev. Stat. sec. 1874, that 'the judges of the
supreme court of each territory are authorized to hold
court within their respective districts, in the counties
wherein, by the laws of the territory, courts have been
or may be established, for the purpose of hearing and de-
termining all matters and causes except those in which
the United States is a party.'

"Sec. 1907 provided that 'the judicial power in New
Mexico, Utah, Washington, Colorado, Dakota, Idaho,
Montana and Wyoming shall be vested in a supreme court,
district courts, probate courts, and in justices of the peace.'

"These provisions, mutatis mutandis, were contained
in the organic law of New Mexico.'

"The number of judges of that territory having been
raised to five, it was provided by an act of July 10, 1890,
(26 Stat. at L. 226, chap. 665) : 'Sec. 3.　That the said
territory shall be divided into five judicial districts, and
a district court shall be held in each district by one of
the justices of the supreme court, at such time and place
as is or may be prescribed by law.　Each judge, after as-
signment, shall reside in the district to which he is as-
signed.　Sec. 4.　That the present chief justice and his
associates are hereby vested with power and authority,
and they are hereby directed to divide said territory into
five judicial districts, and make such assignment of the
judges provided for in the 1st section of this act as shall
in their judgment be meet and proper.'

"Section 1852 of the Compiled Laws of New Mexico
of 1884 is as follows : 'When any justice of the supreme
court shall be absent from his district, or shall be in any
manner incapacitated from acting or performing any
of his duties of judge or chancellor, in his district, or
from holding court therein, any other justice of the su-
preme court may perform all such duties, hear and de-

termine all petitions, motions, demurrers, grant all rules and interlocutory orders and decrees, as also all extraordinary writs in said district.'

"It appears to us that this enactment was within the power of the legislative assembly under the Revised Statutes, and that it is not inconsistent with the provision for the assignment of the judges to particular districts and their residence therein.

"By the organic act and the Revised Statutes, the whole of the judicial power of the territory was vested in the supreme court, district and probate courts, and justices of the peace; and the supreme court and district courts possessed common-law and chancery jurisdiction. The supreme court of the territory held that the judicial power, which was thus vested in plenary terms in the district courts, was to be exercised in each district 'by one of the justices of the supreme court,' and that the organic law did not require that it should be exercised by any particular one of the justices; that while for the convenience of the public it was provided that a justice should be assigned to each district and reside therein, there was no express or implied prohibition upon any judge against exercising the power in any district other than the one to which he has been assigned; and that there was nothing in the language of the provision requiring such a construction as would confine the exercise of the power to the particular justice assigned to a district when he might otherwise be incapacitated."

It should be borne in mind that sec. 1852 of the Compiled Laws of New Mexico, of 1884, appears in the compilation of 1897 as sec. 2901.

In considering the effect and purpose of this legislation we are of the opinion that the Hon. Associate Justice John R. McFie had jurisdiction over both the subject matter and parties at the time he made the order granting the temporary writ of injunction.

This leaves but the final objection urged in connection with the first assignment of error, i. e. that the jurisdiction nowhere appeared of record in the case.

The order granting the temporary writ was signed

"John R. McFie, Associate Justice, acting in the absence of the judge of the Fourth Judicial District."

The authorities are not in harmony as to the necessity for the record showing the authority of a judge's act in a district other than his own. It has been said that in the absence of any showing to the contrary it will be presumed that he acted under proper authority.

We are fully of the opinion, however, that the authority of Judge McFie, in this instance, sufficiently appeared, and that further inquiry into the merit of this assignment of error is unnecessary.

The next assignment of error relied upon is based upon the fifth finding of fact and the conclusion of law drawn therefrom as the same appears in the Final Decree. The fifth finding of fact is as follows: "Fifth—That the said alleged contract made and entered into by the defendants, C. M. Williams, James M. Mayes, Rafael Savedra and Albert W. Farr, as trustees of School District No. 22, of Union County, New Mexico, was made without any advertisements or public notices, and that said proposed expenditure amounted to $5,820.00, but that eight requests for bids and sealed proposals were made by writing letters to eight different contractors, and three sealed bids were received."

The alleged erroneous conclusion of law, also found in the Final Decree is as follows: "In view of the foregoing findings of fact, the court is of the opinion that under section 1581 of the Compiled Laws of the Territory of New Mexico, the said alleged contract made and entered into by and between the defendant C. M. Williams and the defendants James M. Mayes, Rafael Savedra and Albert W. Farr, acting as the Board of Trustees of School District No. 22 of Union County, New Mexico, is null and void in that no advertisement or public notices of any kind or character requesting the submission of sealed proposals for the erection of said school building according to the plans and specifications adopted by said School Board was made."

Section 1581 referred to is section 26 of chapter 77 of the Session Laws of 1891. It is urged by plaintiffs

in error that said chapter 77 of the Session Laws of 1891 was enacted for the sole purpose of creating a Board of Education in municipalities, and specifying the duties and powers thereof, and that the defendants below, plaintiffs in error here, are not bound by the provisions of said section 1581 with respect to the requirement for letting of a contract for the erection of a public building involving the expenditure of more than five hundred dollars, upon sealed proposals, and to the lowest responsible bidder.

It is also contended that section 1543 of the Compiled Laws of 1897, which appears as section 21 of chapter 25 of the Session Laws of 1891, as amended by chapter 97 of the Laws of 1907, and section 7 of chapter 119 of the Session Laws of 1903, contains all the provisions empowering school directors to provide school houses and sites therefor, and also all provisions for the making of contracts in relation thereto, and that nowhere is there any requirement that a Board of School Directors shall advertise for bids, before letting a contract for the building of a school house, involving an expenditure of more than five hundred dollars.

Chapter 25 of the Session Laws of 1891 is entitled: "An act establishing common schools in the Territory of New Mexico, and creating the office of Superintendent of Public Instruction." This act was approved February 12th, 1891, and provides for the creation of the Territorial Board of Education and the office of Superintendent of Public Instruction, and the duties of such superintendent of Public Instruction. Said act further provides for the election of a Superintendent of schools for each county, defining his duties, and provides for the formation of school districts and for regulation thereof, prescribing the qualifications of school directors, and defining the duties of such directors; further providing as to general matters in connection with taxation and school funds. This act is plainly limited in its scope to the purpose indicated, and the 45 sections of the act appear in the compilation of 1897 as sections 1514 to 1557, both inclusive.

At the same session of the legislature an act designated as an amendatory act of said chapter 25 was passed, and appears in the Session Laws of 1891 as chapter 77. This last mentioned act is entitled: "An act to amend an act entitled 'An act to establish common schools in the Territory of New Mexico and creating the office of Superintendent of Public Instruction,' approved February 11, 1891." This last mentioned act of the Legislature was approved February 26th, 1891, and appears in the Compiled Laws of 1897 as sections 1558 to 1591, both inclusive. It provides for salaries of County Superintendents; requirements as to qualification of voters at school elections; exemption of certain classes of property from taxation for school purposes; and for the establishment and maintenance of a system of schools in each city or town, all cities and towns then organized, or thereafter organized under any law of the territory, to be governed by the provisions of this act. The authorities having charge of such schools are designated as Boards of Education.

It appears that, the second act of the Legislature, referred to, amends the first act in the matter of a general tax levy and that it supplements other provisions of the first act, particularly with regard to provision for necessary expenses of members of the Board of Education and pay for the services of the County Superintendent.

A careful examination of both acts further discloses that those sections which are general in their scope or application were apparently intended by the Legislature to apply to all common schools; reference to the provisions as to poll tax and compulsory attendance verifying this statement.

In the case of Blackwell v. Bank of Albuquerque, 10 N. M., 566, our Territorial Supreme Court held:

"It is a well settled principle that all laws enacted at the same session of the Legislature relating to the same subject are in pari materia, and are to be considered and construed together as if they were different sections of one act, and as if enacted on the same day."

We are, therefore, of the opinion that sec. 1581 (sec. 26 of chap. 77 of the Session Laws of 1891) of the Compiled Laws of 1897, is applicable to, and binding upon, Boards of School Directors as well as Boards of Education.

This leaves for our determination but one question, viz: In the absence of a provision in the statute requiring publication of notice, or call for bids, in matters of contracts for public work, where competitive bidding is required, is publication of notice necessary or required? The statute in question is as follows:

"No expenditure involving an amount greater than two hundred dollars, shall be made except in accordance with the provisions of a written contract, and no contract involving an expenditure of more than five hundred dollars, for the purpose of erecting any public buildings or making any improvements, shall be made except upon sealed proposals, and to the lowest responsible bidder."

It is urged that this statute does not in language require any advertisement for bids, but we cannot agree with this contention.

It has been held, in a similar case where sealed proposals were required and the work was to be let to the lowest responsible bidder, that the requirements referred to plainly implied that there should be notice. Galbreath v. Newton, 30 Mo. App. 394. In the same case, subsequently before the same court, the doctrine, that notice was implied where sealed proposals and a letting to the lowest responsible bidder were required, was reffiarmed, and the implied notice was defined as reasonable public notice.

Galbreath v. Newton, 45 Mo. App. 322.

We are clearly of the opinion that this statute (sec. 1581) required competitive bidding, based upon plans and specifications, and to attain that end some form of reasonable public notice was required and is to be implied from the nature of the statute.

Chippewa Bridge Co. v. City of Durand, 99 N. W. Rep. 607.

It has also been held that a requirement for public work to be let to the lowest bidder necessarily implies

a common standard by which to measure the respective bids, which should be prepared and upon which the bids must be based.

Mazet v. Pittsburg, 137 Pa. 548.

Kneeland v. Furlong, et al., 20 Wis. 460.

It not appearing in this case that any form of public notice was given we are of the opinion that the court below did not err in its findings of fact and conclusions of law based thereupon and the decree is, therefore, affirmed.