## FISHER, ON BEHALF OF BARCELON, v. BAKER.

### ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 214.　Argued October 9, 10.—Decided December 3, 1906.

When an application on *habeas corpus* is denied because the writ had been suspended, and thereafter, and before appeal taken is allowed, the suspension is revoked, the question of power of the authorities to suspend the writ becomes a moot one not calling for determination by this court.

A proceeding in *habeas corpus* is a civil, and not a criminal, proceeding, and as final orders of Circuit or District Courts of the United States in such a proceeding can only be reviewed in this court by appeal, under § 10 of the Act of July 1, 1902, 32 Stat., 1369, a final order of the Supreme Court of the Philippine Islands in *habeas corpus* is governed by the same rules and can only be reviewed by appeal and not by writ of error.

THE facts are stated in the opinion.

*Mr. Frederic R. Coudert*, with whom *Mr. Howard Thayer Kingsbury* was on the brief, for plaintiffs in error:

It was proper to determine this proceeding on the merits upon the return of the order to show cause. *Ex parte Yarbrough*, 110 U. S. 651, at 653; *Ex parte Milligan*, 4 Wall. 2, at 110. Under the Philippine Civil Government Act, the power of the Governor and Commission to suspend the privilege of the writ of *habeas corpus* is limited to cases in which "rebellion, insurrection, or invasion" actually exists. The language of the act is similar to that of the Constitution, and should be construed with reference thereto. Civil Gov't Act, sec. 5; U. S. Const. Art. 1, sec. 9; Doc. Hist. U. S. Const., vol. III, pp. 565, 628–726, vol. IV., pp. 824–825. History shows that a discretionary power of suspension is not a safeguard of the State, but an engine of tyranny. May's Const. History of England, vol. 2, pp. 252–259. The only suspensions in the United States have been authorized by Congress in particular

emergencies. *Merryman's case,* 17 Fed. Cas. No. 9487; 12 U. S. Stat. 755; 17 U. S. Stat. 13; Burgess on "Reconstruction and the Constitution," pp. 257–261.

The existence of a state of "rebellion, insurrection, or invasion" is a question of fact to be judicially determined by the courts. The test is the same as the test of peace or war; that is, whether the courts are open and performing their functions unhindered. *Milligan Case,* 4 Wall. 2, 121, 127; Dicey "The Law of the Constitution," 6th ed., p. 509; Pollock, "What is Martial Law," Law Quarterly Review, vol. 18, p. 152.

*In re Boyle,* 45 L. R. A. 832, is not applicable. Idaho Constitution, Art. I, sec. 5, Art. IV, sec. 4, Penal Code, secs. 5164, 5166. If the suspending authority is the sole judge of the facts, then the power is in effect discretionary and unlimited. The suspension of the writ is not analogous to executive acts to be performed by an officer acting within his usual sphere, but is the one instance in which the executive or legislative department is allowed to interfere with the usual processes of the judicial department.

It is only in questions of foreign war or peace that the decision of the political department is conclusive. *Aliter* of domestic war or insurrection. *Fourteen Diamond Rings* v. *United States,* 183 U. S. 176; *Lincoln* v. *United States,* 197 U. S. 419.

There was no "rebellion, insurrection, or invasion" in the Province of Batangas at the time of the application herein. Philippine Commission Report, 1905, Part I, pp. 56, 58, 173, 216; Part 3, pp. 8, 133. "Insurrection" is necessarily political; ladronism is mere common law crime (Acts of Philippine Commission, Nos. 518, 1121, vol. 9, p. 235; vol. 15, p. 99). The Governments of the United States and of the Philippine Islands had expressly recognized the existence of peace (Phil. Comm. Report, 1905, vol. I, pp. 26, 801).

The prisoner is restrained of his liberty without due process of law, contrary to the Constitution and the Philippine Civil

Government Act (Sec. 5). He is in custody, and this court can relieve him.

Under the Constitution, the power to suspend the privilege of the writ of *habeas corpus* rests in Congress, and cannot be delegated to the Philippine Governor and Commission. This constitutional provision is applicable to the Philippines, and hence is controlling. *Rassmussen* v. *United States*, 197 U. S. 516; *Dorr* v. *United States*, 195 U. S. 138. The attempted inclusion of "insurrection," as a ground of suspension, is unconstitutional and void. "Insurrection" is not synonymous with rebellion. Birkheimer, Military Gov'm't and Martial Law, p. 485, quoting Lieber's Code.

*Habeas Corpus*, though procedural in form, is a substantive right of the most sacred character. It is the constitutional guarantee of the liberty of the individual.

*The Solicitor General* for defendant in error:

The writ must be dismissed for lack of jurisdiction. Petitioner's remedy was by appeal and not by writ of error. Sec. 10 of the Act of July 1, 1902, 32 Stat., 691, 695, provides that final judgments of the Supreme Court of the Philippines may be reviewed by the Supreme Court of the United States in the same manner and under the same regulations as the final judgments of the Circuit Courts of the United States. It is well settled that an order of a Circuit or District Court of the United States upon application for *habeas corpus* is reviewable only by appeal. *In re Morrissey*, 137 U. S. 157; *Rice* v. *Ames*, 180 U. S. 371, and cases cited. *Habeas corpus* is a civil and not a criminal proceeding, although instituted to arrest a criminal prosecution. *Ex parte Tom Tong*, 108 U. S. 556; *Farnsworth* v. *Montana*, 129 U. S. 104; *Cross* v. *Burke*, 146 U. S. 82.

The proclamation of the Philippine Governor suspending the writ was revoked October 19, 1905. If the application for *habeas corpus* had been renewed after that date, or if the writ had been granted and then dismissed, that determination

would necessarily have proceeded on other grounds than the suspension of the writ. There is, therefore, a mere moot question here, which the court will decline to consider under well settled precedents. *California .v. San Pablo & Tulare R. R.*, 149 U. S. 308; *Mills* v. *Green*, 159 U. S. 651; *Kimball* v. *Kimball*, 174 U. S. 158; *Codlin* v. *Kohlhausen*, 181 U. S. 151.

The record contains significant evidence of the necessity for the Governor's action in suspending the writ. The intent of sec. 5, Act of July 1, 1902, was to commit to the executive the necessary determination of the fact that an exigency exists requiring suspension. Congress gave the power specifically, not leaving it to the doubtful question whether or not the provision of the Constitution, Art. I, sec. 9, cl. 2, applies to the Philippines. The precise limitation of the Constitution does not control. *Kepner* v. *United States*, 195 U. S. 100, 117; *Downes* v. *Bidwell*, 182 U. S. 279; and see *Dorr* v. *United States*, 195 U. S. 138. It is well settled that the executive determination in kindred matters is beyond judicial review. *Martin* v. *Mott*, 12 Wheat. 19; *Luther* v. *Borden*, 7 How. 1, 42, 45; Pomeroy's Constitutional Law, sec. 476; Tucker on the Constitution, p. 581. There is no illegal delegation of legislative power. *In re Oliver*, 17 Wisconsin, 703; *Railroad* v. *Commissioners*, 1 Ohio St. 88; *Field* v. *Clark*, 143 U. S. 649; *Locke's Appeal*, 72 Pa. St. 491; *Buttfield* v. *Stranahan*, 192 U. S. 470; *Slack* v. *Railroad*, 13 B. Mon. 1, 23, 24; *Blanding* v. *Burr*, 13 California, 343, 357; *Moers* v. *City of Reading*, 21 Pa. St. 188, 202; Cooley, Const. Lim., 6th ed., pp. 137, 138, 142; *Dorr* v. *United States*, 195 U. S. 138, 143, 149, 153.

As to the Civil War situation. The question of a broad and inherent power in the executive alone was before the courts in connection with President Lincoln's orders and proclamations suspending the writ of *habeas corpus* during the Civil War, and it is conceded that the weight of authority is that under the Constitution the power to suspend the writ or to authorize its suspension belongs to Congress and not to the President. *Ex parte Merryman*, Taney, 1246; *Ex parte Benedict*, Fed. Cas.

VOL. CCIII—12

No. 1292; *McCall* v. *McDowell*, 1 Abb. 212; *Ex parte Field*, 5 Blatchf. 63; *In re Kemp*, 16 Wisconsin, 359; *In re Oliver*, 17 Wisconsin, 703. But here the case is entirely different. The executive is not assuming to act alone, but under the specific authority of Congress, and the question of an inherent power in the executive is not involved. *Ex parte Milligan*, 4 Wall. 2, is not against our contentions. The only point adjudged there was that a resident of a loyal State, where the Federal courts were meeting and peacefully transacting their business, could not constitutionally be tried and punished by a military commission; that the *habeas corpus* act of 1863 forbade this and gave the Circuit Court complete jurisdiction, and that, therefore, the writ was properly issued. As to later cases, see the constitution of Idaho, art. I, sec. 5; *In re Boyle*, 45 L. R. A. 832; *Ex parte Moore*, 64 N. C. 802.

It has been declared and held that the President may not suspend the privileges of the writ of *habeas corpus* without the authority of an act of Congress. It has been decided that, so authorized, he may determine at his discretion whether the public safety requires suspension and suspend the writ accordingly. It has not been decided that, so authorized, he may not determine whether the exigency of invasion or rebellion has arisen. There can be no doubt of the intent of the act for the Philippines, and it is not subject to the precise limitations of the constitutional provision.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Application for the writ of *habeas corpus* was made to the Supreme Court of the Philippine Islands August 2, 1905, on behalf of one Barcelon, seeking to be discharged from alleged illegal detention in the province of Batangas. An order to show cause was granted, returnable August 4, to which return was made, the cause heard and the application denied on the ground that the writ of *habeas corpus* had been suspended and

that the action of the Philippine authorities in that regard was not open to judicial review.

Petition for the allowance of a writ of error from this court, dated October 19, and service of copy thereof acknowledged by respondents the same day, was filed January 3, 1906, and the writ of error thereupon allowed and issued on that day.

The second clause of sec. 9 of art. I of the Constitution of the United States provides: "The privilege of the writ of *habeas corpus* shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it."

The seventh paragraph of sec. 5 of the act of Congress of July 1, 1902, 32 Stat., c. 1369, pp. 691, 692, reads: "That the privilege of the writ of *habeas corpus* shall not be suspended, unless when in cases of rebellion, insurrection, or invasion the public safety may require it, in either of which events the same may be suspended by the President, or by the Governor, with the approval of the Philippine Commission, wherever during such period the necessity for such suspension shall exist."

The record discloses that on January 31, 1905, the Philippine Commission adopted the following resolution:

"Whereas certain organized bands of ladrones exist in the provinces of Cavite and Batangas who are levying forced contributions upon the people, who frequently require them under compulsion to join their bands, and who kill or maim in the most barbarous manner those who fail to respond to their unlawful demands and are therefore terrifying the law-abiding and inoffensive people of those provinces; and

"Whereas these bands have in several instances attacked police and constabulary detachments and are in open insurrection against the constituted authorities; and

"Whereas it is believed that these bands have numerous agents and confederates living within the municipalities of the said provinces; and

"Whereas, because of the foregoing conditions, there exists a state of insecurity and terrorism among the people which makes it impossible in the ordinary way to conduct preliminary

investigations before justices of the peace and other judicial officers:

"Now, therefore, be it resolved, That, the public safety requiring it, the Civil Governor is hereby authorized and requested to suspend the writ of *habeas corpus* in the provinces of Cavite and Batangas."

Whereupon, on the same day, the Civil Governor issued the following proclamation:

"Whereas certain organized bands of ladrones exist in the provinces of Cavite and Batangas who are levying forced contributions upon the people, who frequently require them under compulsion to join their bands, and who kill or maim in the most barbarous manner those who fail to respond to their unlawful demands and are therefore terrifying the law-abiding and inoffensive people of those provinces; and

"Whereas these bands have in several instances attacked police and constabulary detachments and are in open insurrection against the constituted authorities, and it is believed that the said bands have numerous agents and confederates living within the municipalities of the said provinces; and

"Whereas, because of the foregoing conditions, there exists a state of insecurity and terrorism among the people which makes it impossible in the ordinary way to conduct preliminary investigations before justices of the peace and other judicial officers:

"In the interest of the public safety, it is hereby ordered that the writ of *habeas corpus* is from this date suspended in the provinces of Cavite and Batangas."

But we must take notice of the fact that on October 19, 1905, the Civil Governor issued a proclamation revoking that of January 31, 1905, as follows:

"Whereas the ladrone bands which up to a recent date infested the provinces of Cavite and Batangas have been practically destroyed and the members thereof killed or captured or have surrendered, so that the necessity for the continuance of the suspension of the writ of *habeas corpus* in the

aforesaid provinces which was made necessary by the conditions therein prevailing on the thirty-first day of January last no longer exists:

"Now, therefore; I, Luke E. Wright, Governor General of the Philippine Islands, being duly authorized and empowered thereto by the Philippine Commission, do hereby proclaim the revocation of the suspension of the writ of *habeas corpus* in the provinces of Cavite and Batangas which was made by me on the thirty-first day of January last."

This proclamation wiped out the basis of the decision sought to be reviewed on the day when the copy of the petition for writ of error was served on opposing counsel, and more than two months before the writ of error was issued. The question ruled by the court below and solely argued before us became in effect a moot question, not calling for determination here. *Mills* v. *Green*, 159 U. S. 651.

But the disposition of this writ of error must be rested on another ground.

The proceeding is in *habeas corpus*, and is a civil and not a criminal proceeding. *Cross* v. *Burke*, 146 U. S. 82, 88. Sec. 10 of the Philippine Act of July 1, 1902, 32 Stat. c. 1369, pp. 691, 695, provides:

"That the Supreme Court of the United States shall have jurisdiction to review, revise, reverse, modify, or affirm the final judgments and decrees of the Supreme Court of the Philippine Islands in all actions, cases, causes, and proceedings now pending therein or hereafter determined thereby in which the Constitution or any statute, treaty, title, right, or privilege of the United States is involved, or in causes in which the value in controversy exceeds twenty-five thousand dollars, or in which the title or possession of real estate exceeding in value the sum of twenty-five thousand dollars, to be ascertained by the oath of either party or of other competent witnesses, is involved or brought in question; and such final judgments or decrees may and can be reviewed, revised, reversed, modified, or affirmed by said Supreme Court of the United States

on appeal or writ of error by the party aggrieved, in the same manner, under the same regulations, and by the same procedure, as far as applicable, as the final judgments and decrees of the Circuit Courts of the United States."

Final orders of the Circuit Courts or District Courts of the United States in *habeas corpus* can only be reviewed by appeal and not by writ of error. *In re Morrisey,* 137 U. S. 157, 158; *Rice* v. *Ames,* 180 U. S. 371, 373. In the latter case the court said:

"Motion is made to dismiss the appeal upon the ground that there is no provision of law allowing an appeal in this class of cases. Prior to the Court of Appeals Act of 1891, provision was made for an appeal to the Circuit Court in *habeas corpus* cases 'from the final decision of any court, justice or judge inferior to the Circuit Court,' Rev. Stat. sec. 763; and from the final decision of such Circuit Court an appeal might be taken to this court. Rev. Stat. sec. 764, as amended March 3, 1885, c. 353, 23 Stat. 437.

"The law remained in this condition until the Court of Appeals Act of March, 1891, was passed, the fifth section of which permits an appeal directly from the District Court to this court 'in any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question.' In this connection the appellee insists that an appeal will not lie, but that a writ of error is the proper remedy. In support of this we are cited to the case of *Bucklin* v. *United States,* 159 U. S. 680, in which the appellant was convicted of the crime of perjury, and sought a review of the judgment against him by an appeal, which we held must be dismissed, upon the ground that criminal cases were reviewable here only by writ of error. Obviously that case has no application to this, since under the prior sections of the Revised Statutes, above cited, which are taken from the act of 1842, an *appeal* was allowed in *habeas corpus* cases. The observation made in the *Bucklin* case that 'there was no purpose by that act to

abolish the general distinction, at common law, between an appeal and a writ of error,' may be supplemented by saying that it was no purpose of the act of 1891 to change the forms of remedies theretofore pursued. *In re Lennon,* 150 U. S. 393; *Ekiu* v. *United States,* 142 U. S. 651; *Gonzales* v. *Cunningham,* 164 U. S. 612."

*Writ of error dismissed.*